[Cite as *Hale v. Ohio Dept. of Admin. Servs.*, 2014-Ohio-1463.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Harland H. Hale, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 13AP-642 (Ct. of Cl. No. 2012-03484) |
| Ohio Department of Administrative Services et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on February 20, 2014

*Brunner Quinn, Patrick M. Quinn, Peter A. Contreras* and *Kaitlin L. Madigan*, for appellant.

*Michael DeWine*, Attorney General, *Peter E. DeMarco* and *Christopher P. Conomy*, for appellees.

APPEAL from the Court of Claims of Ohio

TYACK, J.

{¶ 1} Plaintiff-appellant, Harland H. Hale, is a former judge of the Franklin County Municipal Court, Environmental Division. He filed suit in the Court of Claims of Ohio against the State of Ohio, specifically the Ohio Department of Administrative Services Office of Risk Management and the Supreme Court of Ohio ("the State"), seeking a declaratory judgment and claiming breach of contract and bad-faith denial of insurance coverage under the Ohio Judges' Liability Self-Insurance Program ("Program"). Hale sought reimbursement for the costs of a settlement and attorney fees after being sued in

federal district court.  The Court of Claims granted a motion for summary judgment in favor of the State, and Hale has appealed.

## *Factual Background*

{¶ 2}   Hale was sued in federal district court by Lynn Hamilton, a woman who appeared before Hale for arraignment on a charge of operating a motor vehicle while under the influence.   Hamilton alleged violations of the First, Fifth, and Fourteenth Amendments, an unconstitutional search, battery, sexual imposition, and intentional/reckless infliction of severe emotional distress.  Since the case was settled, the following allegations concerning  Hale's behavior in the courtroom are taken directly from the Hamilton complaint in federal court:

> 4. On June 6, 2011, Plaintiff [Hamilton] was cited by law enforcement on a charge of OVI.  She was ordered to appear in court in the Franklin County Municipal Court ("FCMC") to answer the charge;
>
> 5. On June 22, 2011, Plaintiff appeared for arraignment in Courtroom 4C of the FCMC.  She was unaware of who the Municipal Judge would be who would take her plea;
>
> 6. Upon entering the courtroom, Plaintiff saw Defendant Hale on the bench.  She had once briefly met Hale at Club 185 when she had been introduced by [employee and friend] Defendant [Tammy] Weisgerber.  Other than that one brief introduction, she had no other knowledge of Hale;
>
> 7. When Hale saw Plaintiff in the courtroom, he stated from the bench to Plaintiff's counsel, "I know your client, she's a good friend of mine;"
>
> 8. When it came time for Plaintiff and her counsel to address the court, she and counsel approached the bench.  Hale took her plea of "not guilty" and granted occupational driving privileges up to 7:30 p.m. in the evening;
>
> 9. As Plaintiff and her counsel were leaving the court, and the next case already called, Hale stopped the proceedings and called counsel back to the bench.  Plaintiff observed him talking to counsel.  He beckoned Plaintiff to the bench. When she came to the bench, Hale questioned her about her last name, whether she was married, and whether she had a boyfriend.  Plaintiff answered the questions;

10. Plaintiff thought the questioning odd, but dismissed it from her mind and returned to work.

{¶ 3} Later that evening, at around 6:30 p.m., according to the complaint, Hale had an employee and friend of Hamilton's, [Tammy Weisgerber], call Ms. Hamilton and arrange for a meeting. Hale picked up Ms. Hamilton and drove them to a bar. At the bar, Hale put his hand between Hamilton's thighs, asked for a kiss, and continued to give her unwanted attention. Approximately one-half hour later, Hamilton asked Weisgerber to drive her home, but Weisgerber said that she was too intoxicated to drive Hamilton home. Hale drove Hamilton home and insisted upon coming inside her home. According to the complaint, Hale then subjected Ms. Hamilton to unwanted sexual advances. Hamilton claimed that she did not report the behavior to authorities because she was afraid Hale could retaliate against her.

{¶ 4} In response to the federal lawsuit, Hale requested that the state indemnify him under the Program. The state denied coverage on the basis that Hale was not acting within the scope of his official capacity when the allegations in the federal claim took place.

{¶ 5} Hale brought suit in the Court of Claims of Ohio on April 13, 2012. He sought a declaratory judgment, and claimed breach of contract and bad faith denial of insurance coverage. The state moved for summary judgment. The Court of Claims granted the state's motion on June 19, 2013. This appeal followed with Hale asserting a single assignment of error:

> The trial court erred in granting summary judgment to Appellees because the plain language of the Ohio Judges' Liability Insurance Program entitles Judge Hale to a legal defense and indemnification.

### Standard of Review

{¶ 6} Our standard of review of summary judgment motions is de novo. *Geczi v. Lifetime Fitness*, 10th Dist. No. 11AP-950, 2012-Ohio-2948. " '[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision.' " *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. As such, we stand in the shoes of the trial court and conduct an independent review of the record applying the same summary judgment standard. *Heider*

*v. Ohio Dept. of Transp.*, 10th Dist. No. 12AP-115, 2012-Ohio-3771, ¶ 9.   Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).   Moreover, the party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims.   *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

### Plain Language

{¶ 7}   The Court of Claims and the parties have devoted much of their analysis to whether or not the Program is insurance, akin to insurance, self-insurance, whether there are vested rights, a transfer of risk, whether there was a binding contract, and whether Hale was a third-party beneficiary.   These issues, while interesting legally, do little to resolve the key issue of what Hale is or is not entitled to under the Program.   Ultimately, the actual language of the Program governs the scope of coverage for Hale.

{¶ 8}   Under the plain language of the Program, the Office of Risk Management agreed to pay professional liability claims and judgments properly made and rendered against named self-insureds.   Named self-insureds included each active or sitting judicial officer of the judiciary within the category of courts under the authority of the Supreme Court of Ohio under Article IV, Section 5, Ohio Constitution. Hale fell within that category, and was, therefore, a named self-insured.

{¶ 9}   The unresolved issue is whether the allegations in the Hamilton complaint fall within the scope of a professional liability claim, and if they do, whether or not any of the delineated exclusions apply to Hale's claim.   In order to survive summary judgment, it was necessary for Hale to demonstrate that coverage was potentially, arguably, or even doubtfully available, and there was no exclusion that applied to his claim.   *Smith v. Ohio Bar Liab. Ins. Co.*, 9th Dist. No. 24424, 2009-Ohio-6619, ¶ 20.

{¶ 10} Coverage under the Program encompassed personal claims and combined official and personal claims.   There was no coverage for official capacity-only claims, presumably because judicial immunity would apply to those claims.   The Program contained a series of exclusions as well.   The following are the listed Program exclusions:

- Any claim arising out of bodily injury, sickness, disease, disability, disfigurement, death, or any other physical impairment.
- Any claim arising out of injury, damage or destruction to any tangible property including the loss of thereof except when arising out of your judicial decision.
- Any claim arising out of a conflict of interest between your interests as a judge and the interest of any business you own, control, or manage, either individually or as a fiduciary.  There is no self-insured coverage for claims expenses.
- Any claim arising out of acts, errors, or omissions, which occurred prior to the program effective date listed above.  There is no self-insured coverage for claims expenses.
- *Any claim arising out of any criminal, dishonest, intentional, malicious, reckless, or deliberate act, error or omission.  There is no self-insured coverage for claims expenses.*
- Any suit or writ seeking equitable relief.  There is no self-insured coverage for claims expenses.

(Emphasis added.)

{¶ 11} "Claims" are defined in the Program as follows:

"**Claims**" means either:  a). any demand received by a self-insured for damages arising out of your acts, errors, omissions, in your judicial, ministerial, administrative, or managerial capacity; or b). a grievance filed against you with the Office of Disciplinary counsel or any certified grievance committee; or c). a letter of inquiry sent to you by the office of Disciplinary Counsel or any certified grievance committee.

{¶ 12} Hale argues that the Hamilton complaint alleged that he abused his authority as a judge while acting in his judicial capacity as a municipal court judge, using his authority and power over Ms. Hamilton to subject her to unwanted sexual advances and to intimidate and coerce her.  Hale contends that this misuse of judicial power must be considered a claim that is potentially or arguably within the policy coverage under the Program.

### *Judicial Capacity*

{¶ 13} Not every "personal" question a judge asks in his or her judicial capacity is outside the scope of judicial duties. The questions Hale asked Ms. Hamilton while court

was in session, while intrusive, could, under certain circumstances, have some relevance to Ms. Hamilton's ties to the community for purposes of setting bail. However, as set forth in the complaint, the next case had been called before Hale spoke to her. Additionally, in her federal case, Hamilton was not alleging that she was injured by anything that happened in the courtroom while Hale was acting in his judicial capacity. Hale's courtroom conduct is not part of the behavior that Ms. Hamilton claims injured her and violated her civil rights. As noted above, "[p]laintiff thought the questioning odd, but dismissed it from her mind and returned to work."

{¶ 14} The Hamilton complaint alleged that Hale abused his title as a judge, but the unwanted sexual advances and sexual conduct did not occur while Hale was acting in his judicial capacity. The conduct of which Ms. Hamilton complains, was outside the scope of his duties as a judge. Hamilton does not allege the courtroom conduct was anything but "odd." The Hamilton complaint alleges that his actions outside of court "were malicious, arbitrary, and lacked any legitimate governmental object."

{¶ 15} Therefore, having found that under the plain language of the Program Hale's alleged behavior was outside the scope of coverage, we need not address whether an exclusion also applied. The state is entitled to judgment as a matter of law. Accordingly, the decision of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

BROWN and CONNOR, JJ., concur.

————————————